Case 1:13-cv-03327-JPO-FM   Document 53   Filed 08/12/14   Page 1 of 33

DOL's 13th Retaliation Act: Write-up Attempting to Stymie Plaintiff's Ability to Record & Report Retaliation in a Timely Fashion
DOL's 14th Retaliation Act: Write-up Castigating Plaintiff for His Absences— Necessitated By Ongoing Threats & Harassment
*Quadir v. NYS Department of Labor; Case # 13-CV-3327*

Tuesday, August 12, '14


Mohammed Quadir (Plaintiff Pro Se)
120 Alcott Place, Apt. 2A
Bronx, NY 10475
(646) 327-3667



Hon. J. Paul Oetken
US District Court, SDNY
40 Foley Square
New York, NY 10007


Re: *Quadir v. New York State Department of Labor*
   **13-CV-3327**

- Advising the Court of the **Labor Dept.'s 13th Retaliation Act in Attempting to Stymie Plaintiff's Ability to Record & Report to Others, in a Timely Fashion, DOL's Ongoing Campaign of Retaliation And/Or Adverse Employment Action** (pp. 2-5 of 7).                                                                          1

- **DOL's 14th Retaliation Act: Disciplinary Write-up Castigating Plaintiff for His Absences Most of Which Were Necessitated By DOL's Ongoing Campaign of Constant Threats, Harassment, and Retaliation** (pp. 5-7 of 7).

- **DOL Is Continuing to Deny Plaintiff of Any Leave Accruals Whatsoever--Since Pay Period 5/8/14 to 5/21/14 to the Present Day—As Expounded on Document 52, Filed 7-28-14.**

- Plaintiff Is Aware the Court Will Not Consider in its Review of DOL's Motion to Dismiss These Most Recent Retaliation Acts 13 & 14**.**

- Plaintiff Is Nevertheless Filing This Notice with the Court in Order to Inform That the Labor Dept.'s Unrelenting Campaign of Threats, Harassment, Adverse Employment Action and Retaliation Against Him Continues Unabated to This Present Day.


Dear Judge Oetken:

I am writing to inform and memorialize for the Court, in real time, the NYS Labor Dept.'s **13th and 14th Acts of Retaliation** and/or adverse employment action against me, for among other things, daring to exercise my legal rights under the ADA and/or the Rehabilitation Act. In filing this notice, I am fully aware of the fact the Court will not consider these two most recent acts of retaliation—DOL's 13th & 14th—against me per the Court's rulings on May 22 '14 and June 17, '14 (Documents 34 & 37 respectively).  This is because as the Court

DOL's 13th Retaliation Act: Write-up Attempting to Stymie Plaintiff's Ability to Record & Report Retaliation in a Timely Fashion
DOL's 14th Retaliation Act: Write-up Castigating Plaintiff for His Absences— Necessitated By Ongoing Threats & Harassment
*Quadir v. NYS Department of Labor*; Case # 13-CV-3327

advised the Plaintiff that "each supplemental pleading [by him] delays this Court's review of the Motion to Dismiss"—Document 34, p. 2 of 2. The Court will only consider Retaliation Acts 1-8 as articulated by Plaintiff in his Comprehensive Consolidated Supplemental Pleading—CCSP--, which is Document 35, Filed 6-3-14, pp. 26-35 of 51.

Plaintiff is also submitting this missive to the Court as it is likely Plaintiff will file a 2nd lawsuit after this suit has run its course for all the adverse employment actions and acts of retaliation, which occur after May 30, '14 as informed and authorized by the Court in its June 17, '14 order—Document 37, Filed 6-17-14, p. 2 of 2.

# 13th Act of Retaliation & DOL's Latest Attempt to Interfere with Plaintiff's Exercise of a Legally Protected Activity

The Labor Dept.'s 13th Act of Retaliation involves the July 31, '14 Disciplinary Write-up I received regarding "excessive emails" supposedly being sent by me. (See newly submitted **Exhibit p. 136** for this Write-up.) This Write-up, which was personally authored by Bronx DOL office manager Atul Sheffey, served as a follow-up to the disciplinary counseling session regarding this matter, which also occurred on Thursday, July 31, '14. The following three individuals were present during this particular disciplinary counseling session: Mohammed Quadir, supervisor Noemi Ramos, and office manager Atul Sheffey.

(Incidentally, as has always been the case and even though I have an illness—which often makes it difficult for me to concentrate—, I was not afforded any kind of union representation during the meeting. And by union representation, I do not mean Mr. Earle Dawkins as a direct conflict of interest exists with him representing me in any capacity. Mr. Dawkins did not tell the truth in a matter personally involving me earlier. As an example of Mr. Dawkins tricking and ambushing me and then lying about it, please see Document 5-2, Filed 5-31-13, pp. 9 & 16 of 17.)

During this July 31st meeting and subsequent disciplinary write-up, Mr. Sheffey accused me of sending too many emails to too many employees when according to him most of these employees do not wish to receive such emails from me. He also accused me of not following the office's chain of command, which is also not accurate. He concluded by threatening that even more severe disciplinary action would follow if I did not comply with his directive to stop sending emails both to Albany DOL and to Bronx DOL staff.

There are several critical points, which need to be made in regards to office manager Atul Sheffey's inaccurate, unfair, and unjust accusations of me. First, Mr. Sheffey flat-out refused to identify who exactly all of these workers in Albany DOL are who have been repeatedly complaining to him about me sending them too many emails. Second, he also refused to identify exactly who all of these workers in the Bronx DOL office are who also have been repeatedly complaining to him about me sending them too many emails.

2

DOL's 13th Retaliation Act: Write-up Attempting to Stymie Plaintiff's Ability to Record & Report Retaliation in a Timely Fashion
DOL's 14th Retaliation Act: Write-up Castigating Plaintiff for His Absences— Necessitated By Ongoing Threats & Harassment
*Quadir v. NYS Department of Labor*; Case # 13-CV-3327

**As I explained to Mr. Sheffey and will repeat here again, if an allegation of wrongdoing is going to be formally leveled against me (as is now the case via the July 31, '14 Disciplinary Write-up) don't I have a right to know who my accusers are?** (Please see newly submitted **Exhibit pp. 137-156** for my written and emailed response—along with at least four relevant attachments of prior emails and communications—to Mr. Sheffey sent on Thursday, August 7, '14 at 5:21pm.) **And regarding what specific emails, on what dates, and regarding what subject matters they are complaining to Mr. Sheffey about?** Isn't that the way justice is supposed to work? Doesn't my request to know seem very reasonable and fair under the circumstances? **I mean how can I defend myself against accusations if I don't even know who my accusers are and what specific wrongdoing they are accusing me of?**

**I informed Mr. Sheffey that in this Bronx DOL office there are maybe 2-3 workers at most (at most) out of an LSR population of about 20 workers that I communicate with via email**. A lot of the time (not always) I communicate with them via email to obtain answers to work-related questions. For example, if I am absent on Monday, I may send an email on Tuesday to inquire if anything important work-related occurred on Monday. So **I am not really sure who out of these 2-3 workers at most (at most) that I may send emails to inside the Bronx DOL office have been repeatedly (over and over again) complaining to Mr. Sheffey about me sending them too many emails—as Mr. Sheffey did not elaborate any further in this regard either. Also as incorrectly noted by Mr. Sheffey in his July 31,'14 Disciplinary Write-up of me, I never said during that July 31, '14 meeting, I would completely cease emailing DOL staff at the local Bronx office.**  3 I made no such categorical commitment.

**I further explained to Mr. Sheffey that my primary reason for sending emails is to safeguard my job and to have and keep a record of what is going on in this office especially in regards to those events/matters pertaining directly to me, especially if those matters involve retaliation and/or adverse employment action such as the attempt to deny me holiday pay for Washington's Birthday earlier this year on Feb. 17, '14.** (As just one example of several, please see my CCSP—i.e., Document 35, Filed 6-3-14, p. 27 of 51.) I reminded Mr. Sheffey that presently there is an action pending against the NYS Labor Dept. for disability discrimination. And as such I have a real need to document in real time any ongoing adverse employment action and/or retaliation against me—such as suspension, termination, reduction of pay, ongoing threats, harassment, and so forth. My livelihood and job depend on it.

I concluded my emailed response to Mr. Sheffey sent on Thursday, August 7, '14 at 5:21pm (**Exhibit pp. 137-156**) by querying if I as the employee have very good reason to think the information being provided by either him (i.e., Mr. Sheffey) and/or supervisor Noemi Ramos to be incorrect, why would I not have the right to contact the personnel office (or the time and attendance unit of the finance office of the Labor Dept.) in an attempt to obtain the correct answer. By contacting personnel directly and obtaining the correct information, I was able to correct supervisor Noemi Ramos' error when she marked me as absent for Monday, Feb. 17, '14, Washington's Birthday, which incidentally was a paid holiday for all

Case 1:13-cv-03327-JPO-FM   Document 53   Filed 08/12/14   Page 4 of 33

DOL's 13th Retaliation Act: Write-up Attempting to Stymie Plaintiff's Ability to Record & Report Retaliation in a Timely Fashion
DOL's 14th Retaliation Act: Write-up Castigating Plaintiff for His Absences— Necessitated By Ongoing Threats & Harassment
*Quadir v. NYS Department of Labor*; Case # 13-CV-3327

NYS employees—Document 35, Filed 6-3-14, p. 27 of 51.  Had I not taken the initiative to do this, I would have lost **one whole day's worth of salary as a result of Ms. Noemi Ramos' "error"—if it truly was an error and not a deliberate act of retaliation.**  Also, if there is a rule against an employee, such as myself, contacting the personnel office directly, I asked Mr. Sheffey to inform me of that rule and where it may be found especially if the employee has good reason to believe the information being provided by his supervisor or supervisors is either incorrect or false.

Incidentally, there was even **an earlier occasion documented by me when supervisor Noemi Ramos provided me with completely—I mean completely—inaccurate information.  She informed me in writing in Feb. 2012 that based on her knowledge and experience of having worked for the State of NY for over 20 years, an employee—such as myself—could not take a floating holiday leave on that actual floating holiday.  So for example I could not use Lincoln's Birthday floating holiday leave on Monday, February 13, '12, which was Lincoln Birthday; I would have to instead wait for the next pay period for this floating holiday leave to be credited to my leave balance before I could charge this floating holiday leave.  This turned out to be completely and absolutely wrong.**  For more information, please see **Exhibit pp. 149-156.**

Now let me address the real reasons why I believe the Bronx DOL supervisors are attempting to severely restrict or deny me the use of the Dept.'s email system in order to obtain relevant information, pertaining directly to me, from other workers in other DOL divisions and from other workers at the Bronx DOL site.  They are doing so in an obvious attempt to **cripple my ability to track and record in real time the Labor Dept.'s unrelenting campaign of threats**, harassment, disciplinary write-ups, negative evaluations affecting pay, "Full Restrictions" denying leave accruals, and so forth.  (The consequences of being placed on "Full Restrictions" are discussed in greater length on subsequent pages.)  In attempting to deny or severely restrict my use of the email system, the Dept. is clearly attempting to interfere with my ability to engage in a **legally protected activity—chiefly tracking, recording, and reporting, in real time, the Dept.'s ongoing threatening and retaliatory acts against me**.

The Bronx DOL supervisors certainly know that written communication via email is of exponentially greater value than the spoken word.  Written communication—as opposed to verbal communication—makes it far, far more difficult for the Bronx DOL supervisors to later deny that they did not in fact engage in acts of retaliation against me or flat-out lie to me regarding some matter.  The spoken word—unlike the written word—affords the Bronx DOL supervisors cover, concealment, and subsequent and plausible deniability.  The spoken word—unlike the written word— gives the Bronx DOL supervisors the ability to later **lie and deny** about the inaccurate and/or false information given by them to me earlier.

Furthermore, in trying to severely restrict my ability to use the Dept.'s email system, the Bronx DOL supervisors are also trying to impede by ability to inform my co-workers, in a timely fashion, of the weekly (if not daily) acts of threats, harassment, retaliation and/or adverse employment action being taken against me.  The Dept. is also attempting to obstruct

Case 1:13-cv-03327-JPO-FM   Document 53   Filed 08/12/14   Page 5 of 33

DOL's 13th Retaliation Act: Write-up Attempting to Stymie Plaintiff's Ability to Record & Report Retaliation in a Timely Fashion
DOL's 14th Retaliation Act: Write-up Castigating Plaintiff for His Absences— Necessitated By Ongoing Threats & Harassment
*Quadir v. NYS Department of Labor*; Case # 13-CV-3327

my ability to learn from other Bronx DOL workers if any sort of discriminatory or retaliatory action is also being taken against them for some illicit reason—due to race, religion, disability, gender, and so forth.

Even though Plaintiff is not a lawyer and has no legal background whatsoever (unlike the Labor Dept., which is being represented by a small army of talented, taxpayer-funded, and all-expenses-paid attorneys of the State of NY), Plaintiff does not believe the employer—DOL—has the right to interfere, for example, with his ability to inform his co-workers in a timely fashion of the weekly (if not daily) instances of threats, harassment, retaliation, and so forth. In other words, Plaintiff does not believe the Dept. has the right to interfere with the Plaintiff's exercise of a **legally protected activity**—e.g., **reporting to his co-workers in a timely fashion of the constant retaliatory acts, threats, and harassment**—as Plaintiff is not engaging in this legally protected activity in a manner that is overtly disruptive to the operations of the Bronx DOL office or any other DOL office for that matter. It's certainly not like I am screaming at the top of my lungs trying to be disruptive and attract attention to myself in the office.

## 14th Act of Retaliation & Three Retaliatory Acts So Far Directly Affecting Pay and/Or Benefits: Retaliatory Acts #4, 8, & 14

Now let me briefly discuss, the Labor Dept.'s 14th Act of Retaliation, which is the August 1, '14 Disciplinary Write-up dealing with Time & Attendance issues—see newly submitted **Exhibit pp. 157-158**. (I signed this on Aug. 4, '14.) In this Disciplinary Write-up, my immediate supervisor Noemi Ramos severely reprimands me for my "excessive absences." 5

Via this August 1st Write-up, Ms. Ramos informed me that I had been placed on "Full Restrictions." Being placed on **"Full Restrictions" is the main reason, I have been purposely denied by DOL of any leave accruals whatsoever since at least pay period 5/8/14 to 5/21/14 to the present day.** (This was expounded by me for the Court in detail in Document 52, Filed 7-28-14.) Therefore, by placing me on this so-called Full Restrictions the Dept. is engaging in **yet another act—3rd one—of retaliation and/or adverse employment action, which directly and immediately affect my pay and/or benefits**—in this case the denial of leave accruals. The Court should also keep in mind that the Dept.'s actions here in denying leave accruals to me is similar to its attempt to deny me pay for Washington's Birthday on Feb. 17, '14—Document 35, Filed 6-3-14, p. 27 of 51. This pay denial attempt for Washington's Birthday is the **first known retaliatory act** directly affecting pay and/or benefits—i.e., Retaliation Act #4.

(Incidentally, the **second time** the Labor Dept. had engaged in an act of retaliation and/or adverse employment action against me, **which had the direct and immediate effect of denying me an automatic pay raise,** was when I was given an unsatisfactory annual evaluation on April 29, '14 for evaluation period 4-16-13 to 4-15-14. I discussed this at

DOL's 13th Retaliation Act: Write-up Attempting to Stymie Plaintiff's Ability to Record & Report Retaliation in a Timely Fashion
DOL's 14th Retaliation Act: Write-up Castigating Plaintiff for His Absences— Necessitated By Ongoing Threats & Harassment
*Quadir v. NYS Department of Labor; Case # 13-CV-3327*

length in my Comprehensive Consolidated Supplemental Pleading—CCSP— please see Document 35, Filed 6-3-14, pp. 30-35 of 51, for this Retaliation Act #8. Therefore, the Dept. has engaged in **three known retaliatory acts** so far, which have had the effect of **not only setting me apart and treating me very differently from other Bronx DOL employees,** but also has had the direct and immediate effect of denying me a pay raise—as in Retaliation Act #8—, denying me leave accruals—as in this Retaliation Act #14—, or the attempt to charge me as having taken a leave without pay day for Washington's Birthday on Feb. 17, '14, which by the way was a paid NYS holiday for NYS employees—Retaliation Act #4.)

Even though, in this August 1, '14 Disciplinary Write-up Ms. Ramos severely rebukes me for my "excessive absences" and threatens me with additional administrative action in the future (**Exhibit p. 158**), she deliberately omits the main reason for my "excessive absences." As all of the Bronx DOL supervisors—including Ms. Ramos—are fully aware, it is their ongoing and unending campaign of threats, harassment, disciplinary write-ups, negative evaluations (affecting pay), and denial of leave accruals (via "Full Restrictions"), which has forced me to take an **enormous number of days off from work in order to respond to them—usually in writing. And usually just about every time I am retaliated against in some form or another, I end up having to write two separate time-consuming responses: one for inclusion in my personal/employee history folder with the other being for this Court.** I informed the Court of all this on several prior occasions. (As proof, please see, Doc #29, p. 2 of 5, Filed 4-25-14; Doc #27, p. 4 of 5, Filed 4-16-14; Doc #32, p. 3 of 10, Filed 5-5-14; Doc #46, Filed 7-17-14, p. 4 of 11; and Doc #52, Filed 7-28-14, p. 2 of 12.)

6

So it is the Dept.'s ceaseless campaign of retaliatory acts in one form or another that is making it continuously necessary for me to take leave. And Ms. **Ramos has the chutzpah to write me up for "excessive absences" when it is her (and the other Bronx DOL supervisors) retaliatory and harassing actions, one after the other, which is making it necessary for me to take leave on a nearly-continuous basis.**

And as for violating the Dept.'s call-in procedure by specifically not calling between exactly 9am-11am, Ms. Ramos has been made fully aware of the fact by me that on the days I go to court to file/submit documents and/or to do other kind of research related to my case, I do not take my personal cell phone with me. Why? Because the guards do not allow visitors to bring their cell phones inside the courthouse, I leave mine at home. The phones are confiscated by the guards at the entrance to the courthouse where all the metal detectors are; and are only returned when the visitor leaves the courthouse. And even on those days when I am not able to call exactly (exactly) between 9am-11am to report my absence because I had to go to court for example, I make it a point to **leave voicemails prior to 9am for the 3 supervisors** on the 9th floor—including Ms. Ramos—informing them of my absence and the reason for the absence.

In coming close to the end, it also needs to be mentioned that the **Dept.'s call-in procedure for absences as applied to me by supervisor Noemi Ramos has been arbitrary and capricious.** Consider the following as an example: I called and personally spoke to Ms. Ramos on the morning of Tuesday, July 22, '14 to inform that I needed to be absent on that

DOL's 13th Retaliation Act: Write-up Attempting to Stymie Plaintiff's Ability to Record & Report Retaliation in a Timely Fashion
DOL's 14th Retaliation Act: Write-up Castigating Plaintiff for His Absences— Necessitated By Ongoing Threats & Harassment
*Quadir v. NYS Department of Labor*; Case # 13-CV-3327

day due to an appt. with an eye doctor.  She commanded me on the phone to provide her with a medical note; otherwise I would have to report such absences as unauthorized leave without pay (LWOP) days.  This command is also in writing—please see the August 1, '14 Disciplinary Write-up, i.e., **Exhibit p. 157**.

As a result, I provided her with two medical notes with one for the July 22nd absence and the other for the Thursday, July 24th, '14, absence. (As proof, please see newly submitted **Exhibit pp. 159-160** for the July 22nd and July 24th medical notes respectively.)  However, even though I did exactly what she had commanded me to do, **Ms. Ramos being on a power trip** still forced me on the LATS Online Timesheet to mark myself as having taken unauthorized LWOP days for the July 22nd and July 24th, '14 absences.  Now if that is not arbitrary and capricious I don't know what is.

It also needs to be noted, Ms. Ramos would not conduct herself in this manner if she herself were being properly trained and supervised and if she were not receiving direct support from her superiors in the Labor Dept. including from Bronx DOL office manager Atul Sheffey.  As I stated in some of my previous submissions to the Court (e.g., Doc #27, Filed 4-16-14, p. 3 of 5), the Bronx DOL supervisors are behaving this way precisely because they know they have a small army of talented, taxpayer-funded, and all-expenses-paid attorneys of the State of NY constantly making excuses for them and their actions.  This kind of a situation naturally fosters ineptitude, arrogance, irresponsibility, and unaccountability in workers including in supervisors and managers.

7

I thank the Court for its consideration of this case.  A courtesy copy—along with the 25 pages of newly submitted **Exhibit pp. 136-160**—is also being submitted for United States District Judge J. Paul Oetken.


Sincerely,

Mohammad Quadir

Mohammed Quadir
Plaintiff *Pro Se*
(646) 327-3667
Case # 13-CV-3327

DOL's 13th Retaliation Act: Write-up Attempting to Stymie Plaintiff's Ability to Record & Report Retaliation in a Timely Fashion
DOL's 14th Retaliation Act: Write-up Castigating Plaintiff for His Absences— Necessitated By Ongoing Threats & Harassment
*Quadir v. NYS Department of Labor*; Case # 13-CV-3327

# NEWLY SUBMITTED EXHIBITS TABLE OF CONTENTS[1]

(1) **RETALIATION ACT #13**: JULY 31, 2014 DISCIPLINARY WRITE-UP REGARDING "STOP SENDING EXCESSIVE E-MAILS"………………………………………….. EXHIBIT P. 136

(2) **MY WRITTEN & EMAILED RESPONSE TO RETALIATION ACT #13—ALONG WITH THE FOUR RELEVANT EMAILED ATTACHMENTS**…………………………….... EXHIBIT PP. 137-156

(3) **RETALIATION ACT #14:** AUGUST 1, 2014 DISCIPLINARY WRITE-UP REGARDING TIME & ATTENDANCE—ABSENCES NECESSITATED BY DOL'S ONGOING & UNRELENTING CAMPAIGN OF CONSTANT THREATS, HARASSMENT, RETALIATION AND/OR ADVERSE EMPLOYMENT ACTION…………………………………..…… EXHIBIT PP. 157-158

(4) **JULY 22 & JULY 24, 2014 MEDICAL NOTES** RESPECTIVELY…………………………….... EXHIBIT PP. 159-160

8

---

[1] These **new Exhibits being submitted today start at Exhibit p. 136 and end at p. 160.**  I am continuing where I left off and am using the same Exhibits numbering system utilized before—see, as an example, ECF Document 52, Filed 7-28-14, p. 12 of 12 for the preceding Exhibit p. 135.

# STATE OF NEW YORK
## DEPARTMENT OF LABOR

### Inter-Office Memorandum

| | | | |
|---|---|---|---|
| **To:** | Mohammed Quadir, *L.S.R.* | **Date:** | July 31, 2014 |
| **From:** | Atul Sheffey, *Manager* | **Office:** | LO 522 (Bronx) |
| **Re:** | Counseling Session [Stop Sending Excessive E-mails] | | |

*Exhibit R/36*

---

This memorandum is to summarize the counseling session meeting we had on July 31, 2014. Also in attendance was your supervisor Noemi Ramos as a witness.

In the meeting I told you this was a formal counseling session regarding the excessive e-mails that you sent to DOL staff. I referenced the most recent instance where you had cc'd Personnel Director Carol Owsiany in Albany on at least two occasions regarding an e-mail which should have been directed to the LATs mail box regarding Time & Attendance issues (attachment #1). In review, you were given chain of command written instruction via email from your supervisor Noemi Ramos. She also instructed you that you were not to email the Personnel Director, Carol Owsiany regarding time and attendance issues. In your written response to your supervisor you failed to follow her instructions and again included Director Owsiany (attachment #2). Director Owsiany then e-mailed you stating to stop e-mailing her (attachment #2). In our counseling session meeting I then gave you a formal directive that you are to immediately stop e-mailing Director Owsiany and any other DOL staff that do not fall into the purview of the subject in question. I also directed you to use the chain of command and contact your supervisor first before e-mailing anyone else. I told you if you have a disagreement with your supervisor, to come to my office and speak to me and not e-mail me. I then will look into the matter for you.

At the meeting I told you that overall your e-mails are excessive and that I have received various complaints from staff in Albany that you e-mailed. Such e-mails are excessive and disruptive. I said overall your e-mails are out of control and do not follow the chain of command and it has to stop today. I said if you are in question of who to e-mail you can come to my office and ask me (not e-mail me). Please remember that our work computers and Outlook are to be used for department business only, any other usage on your part will be considered a violation of policy, inappropriate as well as insubordinate behavior. Please refer to my attachments of department policy: GA Manual 1001 (attachment #3) and GA Manual 1028 (attachment #4) which state inappropriate usage as the following: "*Private business activities such as business transactions, advertising products or services, or any activity meant to promote personal gain.*" Lastly, I said if you have any complaints about this directive you can discuss it with your union reps on your break or lunch times.

I asked if you had any questions, comments and concerns. You replied "besides Carol, who are these DOL staff that are complaining about receiving my e-mails because that's the only person I recently e-mailed" I replied, I'm not just talking about this instance, I'm talking about your excessive e-mailing over all i.e. the past year. You then asked me which e-mails and to whom. I responded that not going to tell you names because I don't trust you to not e-mailing them in inquiring and that you have a habit of e-mailing staff excessively and it has to stop. You said you disagreed and don't recall e-mailing anyone else. I said that's your stance but I'm not going back and forth with you. You have heard my directive. I then asked if you understood my directive? You replied that you will cease on e-mailing DOL staff at the local office but for staff outside the office you have to do what you must because your job is on the line with DOL and "I will do whatever I must to protect myself". I told you that failure to follow this directive will be considered an act of insubordination, which is a disciplinable act. You said you understand.

_Mohammed Quadir_
Signature

_Friday, Aug. 1, '14_
Date

Signature acknowledges receipt of this memorandum. It does not necessarily indicate agreement with its' content. Memo will be placed in my Personal History File. I know that I have the right to respond to this memo and have that response placed in my Personal History File.

CC: Russell Oliver
Maritere Arce
D.E.O.D.
Office of Employee Relations
Personal History File
(4 attachments)

*I disagree with many aspects of this disciplinary write-up & will be submitting a response shortly. MQ, 8-1-14*

**Quadir, Mohammed  (LABOR)**

| | |
|---|---|
| **From:** | Quadir, Mohammed  (LABOR) |
| **Sent:** | Thursday, August 07, 2014 5:21 PM |
| **To:** | Sheffey, Atul (LABOR) |
| **Cc:** | Fernandez, Edna  (LABOR); Beer, Lorri A (LABOR); Owsiany, Carol (LABOR); Ramos, Noemi (LABOR); Quadir, Mohammed  (LABOR); Oliver, Russell  (LABOR); Sheehan-Nolan, Margaret  (LABOR) |
| **Subject:** | Rebuttal to the July 31, '14 Disciplinary "Excessive Emails" Write-up--To Be Included in My Personal/Employee History File |
| **Attachments:** | RE: Monday, Feb. 17, '14 State Holiday?  ; RE: Emailing: Advisory Memorandum No. 2011-05 Please read section in red; RE: Monday, Feb. 17, '14 State Holiday?  ; RE: Leave Request (12:15-5pm, Monday, 2-13-12); Rebuttal to the July 31, '14, Excessive Emails Disciplinary Write-up (8-7-14) Final Version.docx |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |
| **Categories:** | Red Category |

Thursday, August 7, '14

Dear Mr. Atul Sheffey:

I am writing this brief note to memorialize the meeting I had with you and supervisor Noemi Ramos on Thursday, July 31, 2014 inside your office as you are the Bronx DOL office manager.  I am also writing in direct response to the July 31, '14 disciplinary write-up, which I received and signed on Friday, August 1, '14 regarding this "Stop Sending Excessive E-mails" matter.  **I am requesting this response be included in my personal/employee history folder.**  During the meeting you informed me that you have heard many complaints about me excessively emailing people.  **And as such you further informed you were going to write me up (disciplinary write-up) regarding this matter, which I received on Friday, August 1, '14.**

(Incidentally, as has always been the case and even though I have an illness—which often makes it difficult for me to concentrate—, I was not afforded any kind of union representation during the meeting.  And by union representation, I do not mean Mr. Earle Dawkins as a direct conflict of interest exists with him representing me in any capacity.  Mr. Dawkins did not tell the truth in a matter personally involving me earlier.)

In directly addressing the issue of emailing too many people too frequently inside the Labor Dept., it is very important for me to begin by reminding that the only pertinent employee of the Labor Dept. (not working inside this Bronx DOL office), I have recently emailed has been Ms. Carol Owsiany, Director of Personnel.  And she is the only one that I know of who has asked me not to email her—as she advised she works in a division other than the time and attendance unit of the Labor Dept., which is overseen by Ms. Lori Beer of the Labor Dept.'s finance office.  As such, I will not email Ms. Owsiany going forward even though she is the Director of Personnel and my question was about a personnel-

1

related time and attendance matter. **I will however contact Ms. Owsiany if I am specifically instructed/advised to do so as I recently was—about perhaps just 2 months ago—by an union official** regarding a related but somewhat different matter; otherwise, I will certainly and absolutely avoid future contacts with her. And even then—2 months ago—I still did not end up actually contacting Ms. Owsiany.

Incidentally, the last time I emailed Ms. Owsiany must have been close to six months ago—certainly not very recently it does not seem. And I believe she was sent that email as part of a group not even as an individual recipient. **And that matter I believe involved my 2nd Annual Performance Evaluation Comments for 4-16-12 to 4-15-13, which I believe is within the purview of Ms. Owsiany as Director of the Personnel Office not the Finance Office.** So it is certainly not like I make it my business to email Ms. Owsiany every day—or every month or even every 3 months—, which I certainly/of course do not. I realize she is busy and has work to do as do I.

**Per your instruction, going forward I will refrain from emailing individuals in Albany regarding matters, which are specifically not under their purview.** However, if the subject matter is under their purview, **I certainly and absolutely reserve the right to contact them especially if I have reason to believe the information being provided to me in this office by the supervisors is factually incorrect.** (This has been documented by me on at least two separate occasions—as explained in greater detail below.) Furthermore, **I certainly and absolutely also reserve the right to contact them (i.e., send them my formal written response) if a disciplinary write-up authored by one of the Bronx DOL supervisors has also been sent to them as a (cc) copy. For example, the July 31, '14, disciplinary write-up was also sent by you Mr. Sheffey to DOL DEOD; as such my response (this written rebuttal) is also being sent to DEOD.**

During our meeting on Thursday, July 31, '14, you informed me that you have repeatedly heard complaints from personnel from DOL Albany about me sending them too many emails. However, you specifically refused to indicate who exactly these individuals are. Therefore, I **am not really sure who exactly all these people are that you are stating who have been repeatedly (over and over again) complaining to you about me sending them too many emails—as you refused to specify/elaborate any further.** Please, please kindly inform me in writing who exactly these individuals are in DOL Albany (other than maybe personnel directly in the DEWS chain of command in Albany) who have been repeatedly (over and over again) complaining to you about me sending them too many emails.

I mean if an allegation of wrongdoing is going to be formally leveled against me (as is now the case via the July 31, '14 Disciplinary Write-up) don't I have a right to know who my accusers are? And regarding what specific emails, on what dates, and regarding what subject matters they are complaining to you about? Isn't that the way the justice is supposed to work? Doesn't my request to know seem very reasonable and fair under the circumstances? I mean how can I defend myself against accusations if I don't even know who my accusers are and what specific wrongdoing they are accusing me of?

As I just stated the last time I contacted Ms. Owsiany must have been (must have been it seems like) close to probably six months ago—certainly not very recently. And I also have not contacted Ms. Lori Beer very recently either. And this time around, I contacted them only in order to obtain the correct answers to my questions—**as at least on two separate occasions in the recent past I have been provided with inaccurate information by my immediate supervisor Ms. Noemi Ramos.** (Please see the attached emails.)

2

Furthermore, in this Bronx DOL office there are maybe 2-3 workers at most (at most) out of an LSR population of about 20 workers that I communicate with via email. A lot of the time (not always) I communicate with them via email to obtain answers to work-related questions. For example, if I am absent on Monday, I may send an email on Tuesday to inquire if anything important work-related occurred on Monday. So I am also not really sure who out of these 2-3 workers at most (at most) that I may send emails to inside the Bronx DOL office have been repeatedly (over and over again) complaining to you about me sending them too many emails—as you did not elaborate any further in this regard either. Also as incorrectly noted by you in your July 31,'14 Disciplinary Write-up of me, I never said to you during that meeting, I would completely cease emailing DOL staff at the local Bronx office. I made no such categorical commitment.

**As I respectfully explained to you sir, an extremely important part of the reason I send emails is to have and keep a record of what is going on in this office especially in regards to those events pertaining to me. As you are also aware sir, presently there is an action pending against this agency—NYS Labor Dept.—for disability discrimination. And as such I have a real need to document in real time any ongoing adverse employment action and/or retaliation against me— such as suspension, termination, reduction of pay, ongoing threats, harassment, and so forth. My livelihood and job depend on it.**

**And as I also respectfully stated to you sir I will do what I absolutely must—always within the scope of the law of course—to protect my job and my livelihood. (There should not be any misunderstanding or confusion about that.) And that is my primary reason for sending emails to safeguard my job and to have and keep a record of what is going on in this office especially in regards to those events/matters pertaining directly to me—especially if those matters involve retaliation and/or adverse employment action such as the attempt to deny me holiday pay for Washington's Birthday earlier this year on Feb. 17, '14.**

Also if I as the employee have very good reason to think the information being provided by either you and/or supervisor Noemi Ramos is simply incorrect, why would I, as the worker, not have the right to contact the personnel office or the time and attendance unit of the finance office of the Labor Dept.—in an attempt to obtain the correct answer. By contacting personnel directly and obtaining the correct information, I was able to correct supervisor Noemi Ramos' error when she marked me as absent for Monday, Feb. 17, '14, Washington's Birthday, which incidentally was a paid holiday for all NYS employees. Had I not taken the initiative to do this, I would have lost **one whole day's worth of salary as a result of Ms. Noemi Ramos' action. Also if there is a rule against an employee such as myself contacting the Personnel Office directly please inform me what exactly that rule is and where it may be found especially—especially—if the employee has good reason to believe the information being provided by his supervisor or supervisors is totally incorrect.**

You have asked me sir that going forward if I feel the information being provided by supervisor Noemi Ramos to me to be incorrect to contact you. **This I will certainly do.** However, in this particular instance there was no need for me to come to you because you were already apprised of the situation as you were concurrently sent these emails by both supervisor Ramos and myself and you did not articulate a position that was contrary to her position thereby signifying your agreement with her position.

Thank you.

Mohammed Quadir
Bronx Labor Dept. Labor Services Rep.
718-960-7926

P.S.: I am requesting this note be included in my personal/employee history folder for the following two reasons: first, as a direct response to the disciplinary write-up I received and signed on Friday, August 1, '14 regarding this "Stop Sending Excessive Emails" matter; and second, as a summary of the meeting that took place on Thursday, July 31, 2014, inside the Bronx DOL manager's office. **And this response is only being sent to those individuals who have either been provided with (cc) copies of the July 31, '14 disciplinary write-up authored by Bronx DOL office manager Atul Sheffey or were part of the original email regarding this issue—i.e., Ms. Lorri Beer and Ms. Carol Owsiany. No one else in Albany DOL is being sent this email.**

---

**From:** Sheffey, Atul (LABOR)
**Sent:** Thursday, July 31, 2014 10:43 AM
**To:** Quadir, Mohammed (LABOR)
**Cc:** Fernandez, Edna (LABOR); Beer, Lorri A (LABOR); Owsiany, Carol (LABOR); Ramos, Noemi (LABOR)
**Subject:** RE: Chain of command

Mohammed,

Effective immediately stop e-mailing Carol Owsiany and any other DOL staff that that do fall under the purview of the subject in question.
Always first, go through your supervisor Noemi Ramos (chain of command).
I have been receiving complaints from various recipients about your excessive e-mails and this is causing a disruption.
Any questions about this, come speak to me directly and not over e-mails. In fact I will be meeting with you today to discuss your excessive e-mailing.

Atul

---

**From:** Quadir, Mohammed (LABOR)
**Sent:** Wednesday, July 30, 2014 1:29 PM
**To:** Ramos, Noemi (LABOR)
**Cc:** Sheffey, Atul (LABOR); Fernandez, Edna (LABOR); Quadir, Mohammed (LABOR); Beer, Lorri A (LABOR); Owsiany, Carol (LABOR)
**Subject:** RE: Chain of command

Ms. Ramos:

4

I respectfully disagree.  I did follow the chain of command and that is why Mr. Atul Sheffey was sent the email as well.  And he did not state a position contrary to what you had stated and therefore his position was the same as yours.  Therefore, I did not see a need to contact him because he did not disagree with your position as clearly articulated by you in your email, which was also sent to him.

Additionally, **in the past you have provided me with inaccurate information on at least two separate occasions as documented by me**.  For example, you attempted to deny me pay for Washington's Birthday on Feb. 17, '14 (this year).  (Please see the attached email from Fri 3/7/2014 4:11 PM, entitled "RE: Monday, Feb. 17, '14 State Holiday?")  Only when I had contacted personnel, because I felt the information being provided by you as the supervisor was very clearly and obviously inaccurate—only then did I correct your mistake (if genuinely a mistake) and then very reluctantly it seemed.  Therefore, **if I had not corrected your mistake, I would have lost one whole day's worth of salary**.

And there was also the 2nd incident even earlier on Mon 2/13/2012.  You had incorrectly advised me that a worker (such as myself) could not take a floating holiday leave day on that actual floating holiday.  This also turned out to be completely inaccurate.  As proof please see the email from Mon 2/13/2012 10:44 AM, entitled "RE: Emailing: Advisory Memorandum No. 2011-05 Please read section in red."  Even when Ms. Lorri Beer attempted to correct the error in order to assist, you seemed to resist by blaming the floating holiday leave memorandum as being vague and unclear.

Ms. Ramos and I say the following to you with all due respect: Things in life generally do not just randomly occur in a vacuum.  There is usually a history behind everything even though it may not seem apparent at the outset to most.

Thank you.


M. Quadir
718-960-7926

Exhibit P 141

---

**From:** Ramos, Noemi (LABOR)
**Sent:** Wednesday, July 30, 2014 11:20 AM
**To:** Quadir, Mohammed (LABOR)
**Cc:** Sheffey, Atul (LABOR); Fernandez, Edna (LABOR)
**Subject:** Chain of command
**Importance:** High


Mohammed, I received a call from Ms. Owsiany/Director indicating that she does not understand why you are cc'ing her on the emails involving your Unsubmitted Timesheet and denial of leave accruals.  She indicated that she has no responsibility on issues involving Time & Attendance issues.  Therefore, do not include her in any more emails involving your Time & Attendance issues.  As I previously informed you before, there is a chain of command you must follow.  You first method of contact is your direct supervisor or any available supervisor, in this case, you did contact me first.  If and

when you are not in agreement with my response your second method of contact is my direct supervisor.  In this matter, you did not contact Mr. Sheffey.  You instead involved persons that have no bearing on this matter.


*Noemi H. Ramos*
*Supervising Labor Service Representative - LO522*
*Division of Employment and Workforce Solutions*
*400 East Fordham Road, 9th Floor*
*Bronx, NY 10458*
*718/960-7943*
*718/960-7902 - Fax*

Exhibit P. 142

## Quadir, Mohammed  (LABOR)

| | |
|---|---|
| **From:** | Quadir, Mohammed  (LABOR) |
| **Sent:** | Friday, March 07, 2014 4:11 PM |
| **To:** | Ramos, Noemi  (LABOR); labor.sm.LATS |
| **Cc:** | Sheffey, Atul (LABOR); Quadir, Mohammed  (LABOR) |
| **Subject:** | RE: Monday, Feb. 17, '14 State Holiday? |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Ms. Ramos:


Thank you for acknowledging a wrong entry was made by you.  Had I not spotted it, I would have been docked an entire day's worth of pay for that mistake—an entire day.


M. Quadir
718-960-7926

Exhibit P143

---

**From:** Ramos, Noemi (LABOR)
**Sent:** Friday, March 07, 2014 4:00 PM
**To:** Quadir, Mohammed (LABOR); labor.sm.LATS
**Cc:** Sheffey, Atul (LABOR)
**Subject:** RE: Monday, Feb. 17, '14 State Holiday?


Mohammed.  First of all, you should not have contacted LATS directly.  The only time that contact is made to the LATS department is if it is an issue that cannot be taken care of in the office first.  I do not understand why the staff in the payroll office advised you to contact LATS.  You should have been told to speak to your supervisor first.  Second, as you yourself indicated below, that it was I who completed your Attendance Sheet in your absence, therefore, the first contact should have been with me, your supervisor.  As I have discussed with you before, you have to communicate with me any issues or any questions you may have in order for me to assist you.

You Attendance records is now corrected to reflect that 2/17/14 is a Holiday.  This was an error that could have simply been corrected had you communicated this issue with me first.

*Noemi H. Ramos*
*Supervising Labor Service Representative - LO522*
*Division of Employment and Workforce Solutions*
*400 East Fordham Road, 9th Floor*
*Bronx, NY 10458*
*718/960-7943*
*718/960-7902 - Fax*

**From:** Quadir, Mohammed (LABOR)
**Sent:** Friday, March 07, 2014 3:20 PM
**To:** labor.sm.LATS; Ramos, Noemi (LABOR)
**Cc:** Quadir, Mohammed (LABOR); Sheffey, Atul (LABOR)
**Subject:** RE: Monday, Feb. 17, '14 State Holiday?


Dear Sir or Ma'am:


I don't know what your name is as a name was not attached to the response I received from LATS.  I did not mark my absent for Monday, Feb. 17, '14 as this was done for me in my absence by my supervisor Ms. Noemi Ramos.  Before I contacted her I wanted to double check to ensure that Monday, Feb. 17, '14, was indeed a paid NYS State holiday—which I certainly believe it was.  Therefore, I should not have been marked absent for that day by supervisor Ms. Noemi Ramos and docked one full day's worth of pay.  A copy of this email is also being sent to supervisor Ms. Noemi Ramos and office manager, Mr. Atul Sheffey.

Thank you.


M. Quadir
718-960-7926

Exhibit P 144

_____

**From:** labor.sm.LATS
**Sent:** Friday, March 07, 2014 2:49 PM
**To:** Quadir, Mohammed (LABOR); Ramos, Noemi (LABOR)
**Subject:** RE: Monday, Feb. 17, '14 State Holiday?


Mohammed,

Please review your timesheet with your supervisor. We cannot tell you why you filled out your timesheet with leave without pay. Your supervisor will have to assist you. If something needs to be changed, they can help you make the corrections.

Thank you

_____

**From:** Quadir, Mohammed (LABOR)
**Sent:** Friday, March 07, 2014 2:42 PM
**To:** labor.sm.LATS
**Cc:** Quadir, Mohammed (LABOR)
**Subject:** Monday, Feb. 17, '14 State Holiday?


Dear Sir or Ma'am:

I was informed by a Ms. Christine Rosininski (correct spelling?) from the NYS Labor Dept.'s payroll office that before she or anyone else from payroll could help me in answering my question, I had to contact LATS by email first, which is what I am doing.

My name is Mohammed Quadir and work in the Bronx DOL office as a LSR.  I would like for your office/section to review my timesheet for the following period:  2/13/2014 to 2/26/2014.

After reviewing my sheet for pay period for 2/13/2014 to 2/26/2014 please inform me why I was marked absent for Monday, Feb. 17, '14 and was charged leave time.  I thought this particular Monday, Feb. 17, '14 was a recognized paid NYS holiday for all New York State employees.  If so why was I marked absent for this day and charged a full day's worth of leave time?  That is to say Authorized Leave Without Pay?

Please inform.  Thank you.


M. Quadir
718-960-7926

Exhibit P 145

**Quadir, Mohammed  (LABOR)**

| | |
|---|---|
| **From:** | Quadir, Mohammed  (LABOR) |
| **Sent:** | Friday, March 07, 2014 4:11 PM |
| **To:** | labor.sm.LATS; Ramos, Noemi  (LABOR) |
| **Cc:** | Sheffey, Atul (LABOR); Quadir, Mohammed  (LABOR) |
| **Subject:** | RE: Monday, Feb. 17, '14 State Holiday? |

Dear Sir or Ma'am:

I was not on LWOP for the entire pay period:  2/13/2014 to 2/26/2014.

I was present on Monday, Feb. 24, & Tuesday, Feb. 25, '14, respectively.  Are you advising me those two days do not count?  I worked two days at least during that pay period.

Also please inform me of the relevant sections (page no.s) of the GA manual and civil service manual for further guidance.  I would like to be informed for future reference.

I look forward to your answer, because I did work two days.  Thank you.

M. Quadir
718-960-7926

Exhibit P 146

_____

**From:** labor.sm.LATS
**Sent:** Friday, March 07, 2014 3:30 PM
**To:** Quadir, Mohammed (LABOR); Ramos, Noemi (LABOR)
**Subject:** RE: Monday, Feb. 17, '14 State Holiday?

Mohammed,

Since you were on leave without pay for the whole pay period, you are not eligible to be paid for the holiday. Your supervisor filled out your timesheet correctly. For further information on leave without pay, please refer to the GA manual and the Civil service manual for guidance on this matter.

_____

**From:** Quadir, Mohammed (LABOR)
**Sent:** Friday, March 07, 2014 3:20 PM
**To:** labor.sm.LATS; Ramos, Noemi (LABOR)
**Cc:** Quadir, Mohammed (LABOR); Sheffey, Atul (LABOR)
**Subject:** RE: Monday, Feb. 17, '14 State Holiday?

1

Dear Sir or Ma'am:


I don't know what your name is as a name was not attached to the response I received from LATS.  I did not mark my absent for Monday, Feb. 17, '14 as this was done for me in my absence by my supervisor Ms. Noemi Ramos.  Before I contacted her I wanted to double check to ensure that Monday, Feb. 17, '14, was indeed a paid NYS State holiday—which I certainly believe it was.  Therefore, I should not have been marked absent for that day by supervisor Ms. Noemi Ramos and docked one full day's worth of pay.  A copy of this email is also being sent to supervisor Ms. Noemi Ramos and office manager, Mr. Atul Sheffey.

Thank you.


M. Quadir
718-960-7926



**From:** labor.sm.LATS
**Sent:** Friday, March 07, 2014 2:49 PM
**To:** Quadir, Mohammed (LABOR); Ramos, Noemi (LABOR)
**Subject:** RE: Monday, Feb. 17, '14 State Holiday?


Mohammed,

Please review your timesheet with your supervisor. We cannot tell you why you filled out your timesheet with leave without pay. Your supervisor will have to assist you. If something needs to be changed, they can help you make the corrections.

Thank you



**From:** Quadir, Mohammed (LABOR)
**Sent:** Friday, March 07, 2014 2:42 PM
**To:** labor.sm.LATS
**Cc:** Quadir, Mohammed (LABOR)
**Subject:** Monday, Feb. 17, '14 State Holiday?



Dear Sir or Ma'am:


I was informed by a Ms. Christine Rosininski (correct spelling?) from the NYS Labor Dept.'s payroll office that before she or anyone else from payroll could help me in answering my question, I had to contact LATS by email first, which is what I am doing.

2

My name is Mohammed Quadir and work in the Bronx DOL office as a LSR.  I would like for your office/section to review my timesheet for the following period:  2/13/2014 to 2/26/2014.

After reviewing my sheet for pay period for 2/13/2014 to 2/26/2014 please inform me why I was marked absent for Monday, Feb. 17, '14 and was charged leave time.  I thought this particular Monday, Feb. 17, '14 was a recognized paid NYS holiday for all New York State employees.  If so why was I marked absent for this day and charged a full day's worth of leave time?  That is to say Authorized Leave Without Pay?

Please inform.  Thank you.

M. Quadir
718-960-7926

Exhibit P 148

## Quadir, Mohammed  (LABOR)

| | |
|---|---|
| **From:** | Quadir, Mohammed  (LABOR) |
| **Sent:** | Monday, February 13, 2012 9:12 AM |
| **To:** | Ramos, Noemi  (LABOR) |
| **Cc:** | Quadir, Mohammed  (LABOR) |
| **Subject:** | RE: Leave Request (12:15-5pm, Monday, 2-13-12) |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Ok, thank you.


M. Quadir


---

**From:** Ramos, Noemi (LABOR)
**Sent:** Monday, February 13, 2012 9:10 AM
**To:** Quadir, Mohammed (LABOR)
**Subject:** RE: Leave Request (12:15-5pm, Monday, 2-13-12)


As per Ms. Beer, she indicated that only because the actual holiday was yesterday, the day before, that you can use holiday leave for today.


---

**From:** Quadir, Mohammed (LABOR)
**Sent:** Friday, February 10, 2012 4:51 PM
**To:** Ramos, Noemi (LABOR)
**Cc:** Quadir, Mohammed (LABOR); Beer, Lorri A (LABOR)
**Subject:** RE: Leave Request (12:15-5pm, Monday, 2-13-12)


Ms. Ramos:


Please contact Ms. Lorri Beer (Attendance & Leave Unit Manager) and inform me what she says to you.  She specifically advised me (and I did not hear her incorrectly) that I may indeed use the Lincoln Floating Holiday Leave on Monday, Feb. 13, '12, i.e.,  is on the actual day of the floating holiday leave day, which in this case would be on Monday, Feb. 13, '12, not necessarily later.  She said the floating leave day itself may be used on that very same day although it would not show/appear in our PYAR until the following pay period.

Please let me know if she tells you something different from what she told me.  I absolutely do not believe I heard her incorrectly.  Thank you.


M. Quadir

1

P.S.: I am sending her a copy of this email so that she may be familiar with this issue when you contact/call her.   Thank you.

---

**From:** Ramos, Noemi (LABOR)
**Sent:** Friday, February 10, 2012 4:16 PM
**To:** Quadir, Mohammed (LABOR)
**Subject:** RE: Leave Request (12:15-5pm, Monday, 2-13-12)

Mr. Quadir, as long as I have worked for the state (20+ years) I have always been informed by my Supervisors, Managers and Directors that the floating holiday cannot be used until after the employee has worked on the date of the holiday because you have not earned the floating holiday until you have been on pay status for that dates.

As per the Attendance and Leave Manual

To be credited with a floating holiday, an employee must meet the following criteria:

The employee must be in service on February 13, 2012; that is, the employee must be in full pay status for any portion of his/her work shift on the date in order to earn a floating holiday for that day.

Employees are deemed to be in full pay status on February 13, 2012, if, for any portion of their work shift on that day, they work, charge absence to leave credits, are on leave with full pay without charge to leave credits, or are treated as though they are on leave with full pay.

Therefore, in order for you to earn a floating holiday for that day 2/13/2012, you must first be in full pay status on 2/13/12.

However, I will contact Ms. Beer.

---

**From:** Quadir, Mohammed (LABOR)
**Sent:** Friday, February 10, 2012 3:31 PM
**To:** Ramos, Noemi (LABOR)
**Cc:** Quadir, Mohammed (LABOR)
**Subject:** RE: Leave Request (12:15-5pm, Monday, 2-13-12)

Ms. Ramos:

Moments ago, I spoke to a Ms. Lorrie (first name apparently) who identified herself as the manager of Time & Attendance & Leaves Unit at  518

| Attendance Rules (VRWS/Part-Time) | Leaves Unit | 457-0274 |
| --- | --- | --- |

Exhibit P. 150

She informed me that I may indeed use the Lincoln's Birthday floating holiday leave on Monday, Feb. 13, '12.  She said the time accrued won't show up on PYAR until the next pay period.  However, time itself may be used on the very same day.  As I informed you before, I vaguely recall doing this when I was in Ms. Meggett's unit.  Only thing that would need to be is the correct inputting of the Lincoln's Birthday floating holiday leave code, which I could easily look up.

Ms. Lorrie told me that if you have any  questions regarding this issue that you may call her at the aforesaid number.  She is the manager there.


Thank you.


M. Quadir

Exhibit P. 151

---

**From:** Ramos, Noemi (LABOR)
**Sent:** Friday, February 10, 2012 1:40 PM
**To:** Quadir, Mohammed (LABOR)
**Subject:** RE: Leave Request (12:15-5pm, Monday, 2-13-12)


You can't use a Floating holiday until you have been credited for that Holiday.  Which means you can use on the next pay period when it appears under your start balances.  You can only use whatever time you have already accrued not what you will be accruing.  This has always been the rule.

---

**From:** Quadir, Mohammed (LABOR)
**Sent:** Friday, February 10, 2012 12:56 PM
**To:** Ramos, Noemi (LABOR)
**Cc:** Quadir, Mohammed (LABOR)
**Subject:** RE: Leave Request (12:15-5pm, Monday, 2-13-12)


Then what would happen if someone wanted to take the entire day off as a floating holiday leave day on that or for that very same day having obtained prior supervisory authorization of course.  Could they still not take the day off on that day using the actual floating holiday leave?  I was under the impression that a worker could do that.  Was my understanding wrong?  My recollection could be wrong, but I thought the previous supervisor Ms. Meggett allowed it.  Again my recollection could be wrong.

---

**From:** Ramos, Noemi (LABOR)
**Sent:** Friday, February 10, 2012 12:46 PM
**To:** Quadir, Mohammed (LABOR)
**Subject:** RE: Leave Request (12:15-5pm, Monday, 2-13-12)

You cannot use the holiday on the same day you are credited for the holiday.

_____
**From:** Quadir, Mohammed (LABOR)
**Sent:** Friday, February 10, 2012 12:46 PM
**To:** Ramos, Noemi (LABOR)
**Cc:** Quadir, Mohammed (LABOR)
**Subject:** RE: Leave Request (12:15-5pm, Monday, 2-13-12)


Ms. Ramos:


I was referring to the Lincoln Holiday leave on Feb. 13, '12, which I believe is a floating holiday leave.


MQ


_____
**From:** Ramos, Noemi (LABOR)
**Sent:** Friday, February 10, 2012 12:18 PM
**To:** Quadir, Mohammed (LABOR)
**Subject:** RE: Leave Request (12:15-5pm, Monday, 2-13-12)


Time approved.  However, you only have 45 minutes on Election (Holiday) Leave left.  You may charge it the DRL if you would like.


_____
**From:** Quadir, Mohammed (LABOR)
**Sent:** Friday, February 10, 2012 11:51 AM
**To:** Ramos, Noemi (LABOR)
**Cc:** Quadir, Mohammed (LABOR)
**Subject:** Leave Request (12:15-5pm, Monday, 2-13-12)


Ms. Ramos:


I am requesting leave during aforesaid time to attend a doctor's appt.  Will use floating holiday leave as Monday is such a day I believe.  Thank  you.


M. Quadir

*Exhibit P. 152*

4

**Quadir, Mohammed  (LABOR)**

| | |
|---|---|
| **From:** | Beer, Lorri A (LABOR) |
| **Sent:** | Monday, February 13, 2012 10:44 AM |
| **To:** | Ramos, Noemi  (LABOR) |
| **Cc:** | Quadir, Mohammed  (LABOR) |
| **Subject:** | RE: Emailing: Advisory Memorandum No. 2011-05 Please read section in red |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Because in red it says subject to agency procedures.  That allows you to give the time on the day earned.

---

**From:** Ramos, Noemi (LABOR)
**Sent:** Monday, February 13, 2012 10:29 AM
**To:** Beer, Lorri A (LABOR)
**Cc:** Quadir, Mohammed (LABOR)
**Subject:** RE: Emailing: Advisory Memorandum No. 2011-05 Please read section in red

Yes, I read it and I understand what it states .  However, in the same memo see section in orange, it clearly states that in order to be credited with the holiday, you must first be in pay status on 2/13/12, in order to earn the floating holiday for that day.  So on one hand, the memo states in order to be credited with the holiday, you must FIRST earn the floating holiday by being in pay status.  On the other hand, it states you can begin using the floating holiday on 2/13/12 even though the employee has yet to earn the floating holiday.

---

**From:** Beer, Lorri A (LABOR)
**Sent:** Monday, February 13, 2012 9:41 AM
**To:** Ramos, Noemi (LABOR); Quadir, Mohammed (LABOR)
**Subject:** Emailing: Advisory Memorandum No. 2011-05 Please read section in red

Home

Search the
Attendance & Leave
Manual

Instructions

Introduction

Attendance (Part 20)

- 20.1 Basic
  Workweek
- 20.2 Record of
  Attendance
- 20.3 Tardiness

Absence with Pay
(Part 21)

## NEW YORK STATE DEPARTMENT OF CIVIL SERVICE
### Attendance and Leave Manual

### Advisory Memorandum No. 2011-05

**Section 21.1 Holidays - December 2011**

P-1

### Retain Until May 13, 2013

TO: Manual Recipients
FROM: Blaine Ryan-Lynch, Director of Staffing Services
SUBJECT: Designation of Floating Holiday in Lieu of Lincoln's Birthday for
Contract Year 2011–2012

The Governor's Office of Employee Relations has advised us that a floating

1

- 21.1 Sundays & Holidays
- 21.2 Vacation
- 21.3 Sick Leave
- 21.4 Extended Sick Leave
- 21.5 Sick Leave at Half-Pay
- 21.6 Personal Leave
- 21.7 Leave for Extraordinary Weather Conditions
- 21.8 Workers' Compensation Leave
- 21.9 Leave for Subpoenaed Appearance and Jury Attendance
- 21.10 Leave for Civil Service Examinations
- 21.11 Leave for Quarantine
- 21.12 Leaves Required by Law or Negotiated Agreement
- 21.13 Leave for Civil Defense Duties

Leaves Without Pay (Part 22)

- 22.1 Leave of Absence; Duration
- 22.2 Successive Leaves of Absence

Drawing of Earned Credits Upon Separation (Part 23)

holiday has been designated in lieu of a fixed holiday for Lincoln's Birthday, 2012.

The guidelines and eligibility criteria applicable to this floating holiday are the same as those that governed Lincoln's Birthday, February 12, 2011 which was designated as a floating holiday during contract year 2010–2011. **Because the floating holiday for Lincoln's Birthday 2012 falls on a Sunday and will be observed on a Monday, these guidelines provide additional details not normally contained in attendance and leave guidelines for floating holidays. We have bolded material which supplements that contained in previous floating holiday guidelines.**

**Lincoln's Birthday falls on a Sunday in 2012. Under the General Construction Law, Sunday holidays are observed on a Monday.** Managerial/Confidential employees and employees in the Administrative Services, Institutional Services, Operational Services, Professional, Scientific and Technical Services, and Rent Regulation Services Units, who are eligible as described below, will receive credit for a holiday to be used on a date of their choice. The credit for this floating holiday will be carried as a separate entry on time records and will not be merged with holiday leave or holiday compensatory time. Floating holiday credit may be charged in quarter-hour units (or smaller units pursuant to local agreements). The floating holiday must be used by February 11, 2013.

For employees in the above units, therefore, February 13, 2012, will not be observed as a holiday and is to be treated as a regular workday. **An employee's status on February 13, 2012, determines eligibility to be credited with a floating holiday for that day.**

**To be credited with a floating holiday, an employee must meet the following criteria:**

a. The employee must be otherwise eligible to observe holidays under the Attendance Rules and negotiated agreements;

and

b. **The employee must be in service on February 13, 2012; that is, the employee must be in full pay status for any portion of his/her work shift on the date in order to earn a floating holiday for that day (for employees for whom this day is a pass day, see below).**

P-2

Employees are deemed to be in full pay status on February 13, 2012 if, for any portion of their work shift on that day, they work, charge absence to leave credits, are on leave with full pay without charge to leave credits, or are treated as though they are on leave with full pay (e.g., paid military leave, jury leave, workers' compensation leave with full pay without charge to credits, Workers'

Exhibit P 154

- 23.1 Payment for Accruals Upon Separation
- 23.2 Payment for Accruals Upon Entry into Armed Forces
- 23.3 Payment for Overtime Accruals Upon Appointment, Promotion or Transfer

Compensation Supplemental Pay Program or Workers' Compensation Statutory Benefit Program, the Professional, Scientific and Technical Services Medical Evaluation Program, or the M/C Workers' Compensation Program). Employees on sick leave at half-pay and employees on leave without pay for the entire day on February 13, 2012 are not eligible to be credited with a floating holiday for that day.

Full-time employees for whom February 13, 2012 is a pass day are eligible to be credited with a floating holiday. Such employees must be in pay status on either their last work shift before their February 13, 2012 pass day or their first work shift following that pass day in order to be credited with a floating holiday (i.e. employees do not have to be in pay status on both sides of the holiday/pass day to be credited with a floating holiday). Eligible employees are credited with a 7.5 or 8-hour floating holiday, as appropriate.

Crediting Other Public Service Employment as State Service (Part 24)

Suspension of Rules (Part 25)

Eligible part-time employees are credited with a floating holiday if they are regularly scheduled to work or are directed to work on February 13, 2012; they are credited with a floating holiday equivalent to the number of hours they are scheduled to work or actually do work on February 13, 2012 (up to a maximum of 7.5 or 8 hours for each day).

- 25.1 Emergency Required for Suspension of Rules

Subject to agency procedures for requesting time off, eligible employees may use their floating holiday beginning February 13, 2012 and ending with February 11, 2013.

Applicability (Part 26)
- 26.1 To Whom Rules Apply
- 26.2 Exceptions
- 26.3 Rules Applicable to Employees in Negotiating Units

This memorandum is not applicable to Institution Teachers and other employees subject to Section 136 of the Civil Service Law since such employees are not subject to the Attendance Rules. For those employees, the observance of holidays should be determined by the school calendar in effect in their facilities.

For employees in the Security Services, Security Supervisors, Agency Law Enforcement Services, State Police Troopers, State Police Commissioned and Noncommissioned Officers, and State Police Investigators negotiating units, Lincoln's Birthday (February 13, 2012) is not designated a floating holiday. For employees in these units who are eligible to observe holidays, Lincoln's Birthday will be observed as a fixed holiday. When such employees are required to work on this holiday, their benefits will be determined in the same manner as is currently followed for other holidays on which they are required to work.

Appendices

A. Civil Service Attendance Rules

B. Calendar of Legal Holidays & Religious Holy Days

C. Alternative Work

Questions concerning application of these eligibility criteria may be directed to your GOER liaison or the Attendance and Leave Unit of this Department at (518) 457-2295.

Top

Exhibit P 155

Schedules

D. Part-Time
Employment

E. Seasonal
Employment

F. Attendance Rules for
Managerial/Confidential
Employees

G. Reciprocal
Agreements

H. Leave Donation

I. Family & Medical
Leave Act

Disclaimer

Top

Exhibit  P 156

# STATE OF NEW YORK
# DEPARTMENT OF LABOR

## Inter-Office Memorandum

To:     Mohammed Quadir                     Date:   August 1, 2014

From:   Noemi H. Ramos                       Office:  LO 522

Re:     Counseling Session [Time & Attendance]

---

This memorandum is to summarize the meeting we had on July 31, 2014. Also in attendance was Supervisor Edna Fernandez.

In review, your assigned shift is: 9:00am to 5:00pm. You may take a 15 minute rest period twice daily, one in the morning and one in the afternoon. The time of the rest period is left to the discretion of the supervisor, and may vary from day-to-day in accordance with work load conditions. At this office we allow staff to take their breaks at their discretion as long as there is coverage. However, staff that has not worked a full morning or afternoon may not be entitled to a rest period. Your assigned lunch period is from 1:00pm to 1:30pm.

We had a meeting in the Conference Room # 2 to review your time and attendance. We met previously on March 22, 2012, June 20, 2012, August 8, 2012, December 12, 2012, May 1, 2013, June 3, 2013, April 28, 2014, May 14, 2014, and June 6, 2014 to discuss your poor time and attendance. I informed you that this is a formal counseling session, which will be followed by a written memorandum. At the April 28, 2014 and follow-up May 14, 2014 meeting I discussed and informed you that due to your abuse of tardiness and unscheduled absences you were put on Full Restrictions. I informed you that Full Restrictions are defined as the following: for every unscheduled non-FMLA, partial or full day absence, you must call in properly within the first two hours of your shift (9:00am – 11:00am). Your request for time off must be approved by the supervisor or manager (Ms. Ramos; 718-960-7943, Ms. Fernandez; 718-960-7915; Mr. Dawkins; 718-960-7098; Mr. Sheffey; 718-960-4299). If all supervisors and the manager are unavailable you then can leave me a voicemail message with a contact phone number where I can reach you before 11:00am. You are to provide acceptable documentation for any and all non-FMLA, sick and non-sick partial or full day absences immediately upon your return to work. Acceptable medical documentation must show that you were seen by a doctor for the sick absence. You will no longer be able to charge tardiness. Failure to follow these directives will result in a charge to unauthorized leave without pay (UALWOP).

We discussed the following:

I.  **Time & Attendance Issues – During the time period of June 9, 2014 – July 31, 12014 (review period)**

   A.  Excess tardiness and absences - Your tardiness and absences have not improved:
      a.  Tardiness – total of 22 instances (215 minutes).
      b.  Absences – total of 15 instances (112 hours, 30 minutes).
         i.   Of which 10 days (75 hours) were not pre-scheduled (you called out your absence).
         ii.  Of which 2 of the 10 days were due to medical appointments not requested in advance.
      c.  5 days (37 hours, 30 minutes) were scheduled in advanced.

   B.  Violation of department call in procedure – You are continuously calling and leaving a message **prior** to your start time of 9:00am. You are supposed to call me up to 2 hours **after** your start time (not before). That means you have between 9:00am – 11:00am to contact me directly and request sick leave off. Please remember that all other time off is requested, approved and scheduled at least 24 hours in advance. Please refer to GA Manual #0657 for proper call in procedures.

Exhibit P 157

Shown below is a list of your call in procedure violations:

    a.  June 9, 2014:   Left me a voicemail at 6:27am
    b.  July 17, 2014:  Left me a voicemail at 7:08am
    c.  July 21, 2014:  Left me a voicemail at 5:38am
    d.  July 25, 2014:  Left me a voicemail at 7:03am
    e.  July 28, 2014:  Left me a voicemail at 5:30am

C.  Pattern of calling out is as follows:

- Monday:       3 days – total of 22 hours and 30 minutes
- Tuesday:      4 days – total of 30 hours
- Wednesday:  1 day – total of 7 hours and 30 minutes
- Thursday:    1 day – total of 7 hours and 30 minutes
- Friday:        1 day – total of 7 hours and 30 minutes

Failure to follow department call in procedure as well as procedures for full restrictions mentioned above will result in a charge to Unauthorized Leave Without Pay.  Sick absences do not require an advance notice of 24 hours.  An acceptable Medial Certificate upon immediate return to work must show that you were seen by a doctor for the sick absence.

I ended the meeting by asking if you had any questions or comments for me.  Your response was "Just give it to me in writing and I will take it from there".  Then you asked if I will provide you the write-up by Monday and will it be a combined write-up with the earlier meeting held with Mr. Sheffey.  I informed you that the earlier meeting with Mr. Sheffey was on a different topic and I will try to provide you the counseling memorandum as soon as possible.

Please be advised that you are in a professional position that requires you the responsibility to ensure that at all times you service and meet the customer's needs on a daily basis and you are expected to begin work on time.  Your disregard and failure to follow department policy affects our customers, it increases the wait time for customers to be assisted, affects other staff because they have to take on additional work responsibilities in your absence, affects supervisors and the operational needs of the office.

When I counseled you on June 3, 2013, April 28, 2014, May 14, 2014 and June 6, 2014 you were informed that you were to make every effort to improve on time and attendance.  You agreed that you would improve. I encourage you to make every effort to improve your time and attendance. I will continue to monitor your Time and Attendance.  The next review will be done on October 30, 2014; you are on full restrictions until that time. Failure to make an immediate and sustained improvement may lead to further administrative action.

CC:    Atul Sheffey
       Russell Oliver
       Maritere Arce
       D.E.O.D.
       Employee Relations
       Personal History File

I acknowledge that I have received a copy of this memo, and that such memo will be placed in my Personal History File. I know that I have the right to respond to this memo and have that response placed in my Personal History File. My signature below acknowledges receipt of this memorandum. It does not necessarily indicate agreement with its' content.

_Mohammed Quadir_      _Monday, Aug. 4, '14_
Signature                    Date

I disagree with this write-up in many respects
& will be submitting a response shortly.
           — MQ, 8-4-14

Exhibit P158

2

SAM FARAH MD, LLC
3250 WESTCHESTER AVE
PELHAM BAY, NY 10461
PHONE 718-823-0820
FAX 718-823-0821

To whom it may concern:

Please be advised that _Mr. Quadir, Mohammed_ was seen in my office on 7/22/19 for an eye examination.

Sam Farah M.D.

Dr. Samer Farah

Exhibit P. 159

## *Advanced Bio –Behavioral Sciences*

**5 West Main Street**
**Suite 206**
**Elmsford, NY 10523**

**Phone: 914-345-9154**
**Fax: 914-345 5926**

July 24, 2014

To whom it may concern,

Mohammed Quadir has been under my care and was seen by me today 7/24/14.

If you have any questions or concerns, please feel free to contact me at the above phone number.

Sincerely,

Naveed Iqbal, M.D.

NYS License #- 165906-1

Exhibit P. 160