```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                             :
   MOHAMMED QUADIR,                                          :
                                                             :
                              Plaintiff,                     :
                  -v-                                        :    13-CV-3327 (JPO)
                                                             :
   NEW YORK STATE DEPARTMENT OF                              :    OPINION AND ORDER
   LABOR,                                                    :
                                                             :
                              Defendant.                     :
                                                             :
-------------------------------------------------------------X
```

J. PAUL OETKEN, District Judge:

      Plaintiff Mohammed Quadir brings this action against his employer, the New York State Department of Labor (the "Department"), alleging that the Department failed to make reasonable workplace accommodations for his disability, took adverse employment actions against him because of that disability, and retaliated against him for complaining about disability discrimination, all in violation of the Rehabilitation Act of 1973. The Department moves for summary judgment on all claims. (Dkt. No. 105.) For the reasons that follow, the Department's motion is granted.

**I.  Background**

      The following facts are undisputed unless otherwise noted. The Department of Labor operates facilities in communities around New York State to assist job seekers with résumé writing, job matching, interview training, and other services. (Dkt. No. 129 ¶ 1.) Quadir is employed by the Department as a Labor Services Representative—a person who works directly with customers, individually or in group settings—at the Department's Bronx Career Center. (*Id.* ¶¶ 1-2.)

1

In his role as a Labor Services Representative, Quadir regularly taught "workshops"—presentations to groups of customers.[1] On February 2, 2011, Quadir submitted a request for a reasonable accommodation asking that he be "exempt from duties requiring [him] to stand for any considerable length of time" because he was suffering from lightheadedness, fatigue, and other symptoms. (*Id.* ¶ 8.) Quadir asked for an exemption to last "for the time being while [he] tr[ied] to ascertain the nature of [the] illness." (*Id.*) Because teaching workshops ordinarily requires prolonged standing, the Department temporarily exempted Quadir from workshop teaching duties as a result of his request. (*Id.* ¶ 9.)

As is detailed more fully below, Quadir continued to request extensions of his exemption from workshop teaching duties and the Department continued to grant these extensions until February 14, 2012, a little over a year following the initial request. (*Id.* ¶¶ 18-19.) On that date, the Department declined to offer Quadir the specific accommodation he requested—exemption from all workshop duties—but extended him an alternative accommodation. (*Id.* ¶ 18.) Specifically, the Department offered Quadir "suitable equipment (high chair and lectern/podium) and rooms to conduct workshop [sic] while sitting down," an accommodation designed to "address [Quadir's] need to not have prolonged standing work duties." (Dkt. No. 110-20 at 3-4.)

Following the Department's determination, Quadir filed a complaint with the New York State Division of Human Rights. (*See* Dkt. No. 2.) Although his request to be exempt from all workshop teaching duties was denied, the parties agree that Quadir has not taught any workshops since 2011. (Dkt. No. 129 ¶ 21.)

---

[1] The parties dispute whether all Labor Services Representatives at the Bronx Career Center were required to teach workshops, but the Court need not resolve this issue in order to decide the present motion. (*See* Dkt. No. 129 ¶¶ 5-6.)

Quadir, acting *pro se*, initiated this action by filing the Complaint on May 16, 2013, and an Amended Complaint on May 31, 2013**.**  (Dkt. Nos. 2, 5.)  He contends that the failure to grant his sought-after accommodation gives rise to a claim for failure to make reasonable accommodations under the Rehabilitation Act.  He also argues that, in the wake of his request to be exempt from workshop teaching duties, the Department discriminated against him on the basis of his disability and retaliated against him for exercising his rights.

The Department subsequently moved to dismiss the Amended Complaint.  (Dkt. No. 14.)  On August 19, 2014, the Court granted in part and denied in part the Department's motion to dismiss, determining that Quadir had plausibly stated claims for reasonable accommodation, discrimination, and retaliation under the Rehabilitation Act.  (Dkt. No. 54.)  On September 18, 2014, counsel appeared on Quadir's behalf and he ceased prosecuting this case *pro se*.  (Dkt. Nos. 65, 66.)

The Department now moves for summary judgment on all of Quadir's remaining claims.  (Dkt. No. 105.)

**II.** **Discussion**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56.  A fact is material if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine if, considering the record as a whole, a rational jury could find in favor of the non-moving party.  *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

A.  **Reasonable Accommodation**

The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). "Apart from the Rehabilitation Act's limitation to denials of benefits 'solely' by reason of disability and its reach of only federally funded—as opposed to 'public'—entities, these provisions purport to impose precisely the same requirements" as the Americans with Disabilities Act (ADA) and are analyzed under the same legal standards. *See Cercpac v. Health & Hosps. Corp.*, 147 F.3d 165, 167 (2d Cir. 1998). The ADA requires employers to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified [employee], unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the [its] business." 42 U.S.C. § 12112(b)(5)(A). Similarly, regulations promulgated under the Rehabilitation Act by the Department of Health and Human Services require recipients of federal funds to "'make *reasonable accommodation* to the known physical or mental limitations of an otherwise qualified handicapped . . . employee unless the recipient can demonstrate that the accommodation would impose an undue hardship on the operation of its program.'" *Lyons v. Legal Aid Soc'y*, 68 F.3d 1512, 1515 (2d Cir. 1995) (alteration in original) (quoting 45 C.F.R. § 84.12(a)).

An employee suing for failure to make reasonable accommodations must establish four elements to make a *prima facie* case: that "(1) [the] plaintiff is a person with a disability under the meaning of the [Act]; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, [the] plaintiff could perform the essential functions of the job at

4

issue; and (4) the employer has refused to make such accommodations." *Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 118 (2d Cir. 2004).  After this *prima facie* case is established, an employer can defeat such a claim if it shows "(1) that making a reasonable accommodation would cause it hardship, and (2) that the hardship would be undue." *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 6 (2d Cir. 1999) (citing *Borkowski v. Valley Cent. Sch. Dist.,* 63 F.3d 131, 138 (2d Cir.1995)).  "Although a public entity must make 'reasonable accommodations,' it does not have to provide a disabled individual with every accommodation he requests or the accommodation of his choice." *McElwee v. Cty. of Orange*, 700 F.3d 635, 641 (2d Cir. 2012) (citing *Fink v. N.Y.C. Dep't of Personnel,* 53 F.3d 565, 567 (2d Cir.1995)).

Quadir contends that he informed the Department that he was unable to teach workshops—on account of a disability that prevented him from standing for a prolonged period of time, projecting his voice, or concentrating when dealing with more than one person at a time—and that the Department failed to accommodate this request.  (Dkt. No. 140.)  It is true that the Department did not grant Quadir's request to be exempt from all workshop responsibilities.  However, the evidence demonstrates that Quadir only provided the Department with medical documentation supporting his need to be exempt from prolonged standing and "considerable physical exertion."  The Department extended Quadir an accommodation that would have addressed these issues.  In other words, the Department did not "refuse" to accommodate Quadir's documented disability.  *Rodal*, 369 F.3d at 118.  Rather, it adopted the only concrete accommodation suggested by Quadir's doctors: an exemption from prolonged standing.  Because there is no genuine dispute that the Department extended Quadir the

accommodation suggested by Quadir's doctors and thereby addressed his documented disability, Defendants are entitled to summary judgment on Quadir's failure to accommodate claim.[2]

A review of the evidence confirms that Quadir provided the Department with medical documentation outlining his need for an exemption from prolonged standing and "considerable physical exertion." (See Dkt. No. 110-18 at 2.) Quadir's February 2, 2011, request for an accommodation asked that he be "exempt from duties requiring [him] to stand for any considerable length of time." (Dkt. No. 110-9.) This request included a note from a Dr. Kini concluding that it "could be medically necessary [for Quadir] to not stand for long periods of time to avoid falls." (*Id.* at 3.) Quadir contends that he also submitted a medical note dated January 28, 2011, from a Dr. Sindwhani requesting that Quadir "be excused from public speaking," but Quadir has not offered the note for the Court's review or cited any evidence to support his claim that such a note was forwarded to the Department. (*See* Dkt. No. 129 ¶ 7; Dkt. No. 140 at 2.) Following his February 2, 2011 request, the Department temporarily exempted Quadir from teaching workshops. (Dkt. No. 129 ¶ 9.)

In April 2011, Quadir requested an extension of this temporary accommodation. (Dkt. No. 110-10.) Specifically, Quadir asked "[t]o be exempt from all standing work duties" and assigned "only desk-bound/sedentary work . . . ." (*Id.* at 5.) The request included a note from a Dr. Gulati, who asked that Quadir be "excuse[d] . . . from prolonged standing." (*Id.* at 9.)

---

[2] There is an additional impediment to Quadir's claim. As Quadir concedes, he has not taught any workshops since his initial request for accommodation. (Dkt. No. 129 ¶ 21.) Indeed, the Department has not so much as asked Quadir to conduct a workshop in that time. (*Id.;* Dkt. No. 140 at 14.) In other words, Quadir has received his requested accommodation. *See Garvin v. Potter*, 367 F. Supp. 2d 548, 563 (S.D.N.Y. 2005) (defendant did not fail to reasonably accommodate plaintiff's need to be exempt from overtime duty where the "defendant never required the plaintiff to work overtime . . . .").

Subsequently, the Department requested additional medical documentation in support of Quadir's request to be exempt from all workshop duties. (Dkt. No. 110-11.) In response, he provided a doctor's note dated May 27, 2011, which asked that Quadir be excused from "prolonged standing for the next 3 months" because he was suffering from headaches, vertigo, and difficulty concentrating. (Dkt. No. 129 ¶ 12; *see* Dkt. No. 110-12.) On July 20, 2011, the Department informed Quadir that his temporary accommodation would be extended through August 27, 2011, at which time he would be expected to make a new request or submit medical information to support continued accommodation. (Dkt. No. 129 ¶ 13.)

On August 22, 2011, Quadir requested a second extension of his temporary accommodation and submitted in support of his request a doctor's note asking that he be excused from prolonged standing for four months. (*Id.* ¶ 14.) The next day, the Department informed Quadir that his accommodation was extended through December 29, 2011. (*Id.* ¶ 15.)

On December 20, 2011, Quadir requested a third extension of his temporary accommodation. (*Id.* ¶ 16.) A note from Dr. Naveed Iqbal accompanied the request. It stated that Quadir had been diagnosed with "Major Depressive Disorder" and asked that Quadir be excused from "prolonged standing work duties or any activity requiring considerable physical exertion . . . for at least four months." (*Id.* ¶ 17.)

On February 14, 2012, the Department informed Quadir that it was denying his request to be exempt from all workshop teaching duties, but that the Department would provide Quadir with an alternative accommodation tailored to his documented needs. (*Id.* ¶¶ 18, 19.) Specifically, the Department offered Quadir "suitable equipment (high chair and lectern/podium) and rooms to conduct workshop [sic] while sitting down," an accommodation that would "address [Quadir's] need to not have prolonged standing work duties." (Dkt. No. 110-20 at 3-4.)

Because Quadir provided medical documentation asking only that he be excused from prolonged standing and activities involving "considerable physical exertion," and the Department granted an accommodation that would have addressed both issues, it cannot be said that the Department "refused" to accommodate Quadir's documented disability.[3]  *Rodal*, 369 F.3d at 118.  Quadir has failed to offer evidence showing any nexus between his desired accommodation—a total exemption from workshop teaching duties—and his documented needs.  For instance, Quadir has not offered evidence that he submitted a January 28, 2011, from a Dr. Sindwhani asking that Quadir be exempt from public speaking.[4]   Accordingly, the Department is entitled to summary judgment on Quadir's reasonable accommodation claim.

B.      **Discrimination**

Quadir also contends that the Department intentionally discriminated against him because of his disability.  Because intentional discrimination is rarely so open as to be reflected in direct

---

[3] The Department was well within its rights when it asked for medical documentation of Quadir's disability in evaluating his request.  "As a part of the interactive process, the [employer is] entitled to request that [the employee] provide documentation of his disability and the appropriate accommodations for that disability."  *Zito v. Donahoe*, 915 F. Supp. 2d 440, 448 (S.D.N.Y. 2012); *see Gard v. United States Dep't of Educ.*, No. 11-5020, 2011 WL 2148585, at *1 (D.C. Cir. May 25, 2011) (per curiam) ("[A]pellant's failure to provide updated medical information when reasonably requested is fatal to his failure to accommodate claim."); *Monterroso v. Sullivan & Cromwell, LLP*, 591 F. Supp. 2d 567, 579 (S.D.N.Y. 2008) ("An employee's provision of medical information is an indispensable aspect of that interactive process and where an employee fails to provide documentation sufficient to allow an employer to assess the parameters of the employee's disability, 'ADA liability simply does not follow.'" (quoting *Beck v. Univ. of Wisc. Bd. of Regents*, 75 F.3d 1130, 1137 (7th Cir. 1996))).

[4] Similarly, Quadir, while proceeding *pro se* at an earlier stage of this litigation, attached to his complaint a doctor's note from Dr. Iqbal dated April 1, 2012, which stated that Quadir should be excused from "prolonged standing work duties as well as any activity requiring considerable exertion.  This includes group instruction assignments standing or sitting without the use of a lectern."  (*See* Dkt. No. 5-7 at 1.)  However, Quadir does not argue that the note was submitted to the Department for its consideration or otherwise cite the note in support of his opposition to the Department's motion for summary judgment.  Any argument based on the note is, accordingly, waived.

proof, a plaintiff is required only to provide four circumstantial elements to make out a *prima facie* Rehabilitation Act discrimination claim: "(1) plaintiff's employer is subject to the [Rehabilitation Act]; (2) plaintiff was disabled within the meaning of the [Rehabilitation Act]; (3) plaintiff was otherwise qualified to perform the essential functions of her job, with or without reasonable accommodation; and (4) plaintiff suffered an adverse employment action because of her disability." *Jacques v. DiMarzio, Inc.*, 386 F.3d 192, 198 (2d Cir. 2004) (alterations and citation omitted). Once a plaintiff establishes these elements, the "burden then shifts to the employer to 'articulate some legitimate, nondiscriminatory reason' for" its action. *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015) (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)); *see Hodges v. Holder*, 547 F. App'x 6, 8 (2d Cir. 2013) ("Intentional discrimination claims pursuant to the Rehabilitation Act are subject to the burden-shifting analysis originally established by the Supreme Court in *McDonnell Douglas* . . . ."). To prevail, the "plaintiff must then produce evidence and carry the burden of persuasion that the proffered reason is a pretext." *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009) (citation and internal quotation marks omitted); *Hodges*, 547 F. App'x at 8.

The Department does not quibble with the first three of elements of Quadir's *prima facie* case. Instead, it argues that Quadir has not shown that he suffered an adverse employment action because of his disability.

An "adverse employment action" entails a "materially adverse *change* in the terms and conditions of employment." *Sanders v. New York City Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004) (emphasis added) (citation and internal quotation marks omitted). To show a materially adverse action, the relevant change in conditions of employment "must be more disruptive than a mere inconvenience or an alteration of job responsibilities. Examples of such a

change include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities . . . ." *Id.* at 755 (citations and internal quotation marks omitted).

Because Quadir did not suffer an adverse employment action, the Department is entitled to summary judgment on his discrimination claim. Quadir suggests that the Department took nine distinct actions against him that rise to the level of adverse employment actions, which he separates into six categories: (1) counseling memos; (2) the annual evaluation; (3) the 2013-2014 evaluation; (4) a denial of pay for President's Day in 2014; (5) a denial of leave time; and (6) the placement of Quadir on "full restrictions." (Dkt. No. 140 at 16; 22-26.) It is beyond genuine dispute that none of these incidents constitutes an adverse employment action.

As the Court explained in a prior decision in this case, a "negative mark on [Quadir's] record indicating insubordination" is not, alone, "enough to constitute a materially adverse employment action." *Quadir v. N.Y. State Dep't of Labor*, 39 F. Supp. 3d 528, 541 (S.D.N.Y. 2014); *see Henry v. N.Y.C. Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 407 (S.D.N.Y. 2014) ("[T]he threat of disciplinary action, without more, does not constitute an adverse employment action."); *Honey v. Cty. of Rockland*, 200 F. Supp. 2d 311, 320-21 (S.D.N.Y. 2002) ("[C]ourts in this circuit have found that reprimands, threats of disciplinary action and excessive scrutiny do not constitute adverse employment actions in the absence of other negative results such as a decrease in pay or being placed on probation."). As a result, Quadir cannot prevail on his claim that Department "counseling memos" that detailed negative performance by Quadir but "did not have any disciplinary sanction associated with [them]" constituted adverse employment actions.[5]

---

[5] Quadir mentions that his record of absences and tardiness is at issue in an ongoing "arbitration proceeding with the [Department] in which [the Department] used the counseling to support the notion that Mr. Quadir is not qualified or competent to continue his employment with [the

(Dkt. No. 140 at 23.) For the same reason, Quadir's claim that an "annual evaluation" that included the "false information . . . that he had not monitored the Resource Room" is not an adverse employment action. (*Id.* at 24.) Nor is the issuance of an "unsatisfactory" evaluation, without an accompanying material change in the terms and conditions of Quadir's employment. (*Id.* at 24.)

Quadir's remaining arguments are equally without merit. Although he contends that he was discriminated against when he was denied pay for President's Day in 2014, he elsewhere concedes that he was not entitled to receive pay for that day under Department-wide policy. (Dkt. No. 129 ¶¶ 42, 43.) He argues that the Department discriminated against him when it denied his request to take leave in order to spend time prosecuting his case against the Department, but he has made no effort to show that he was entitled to take leave for this purpose. (Dkt. No. 140 at 25.)

Finally, he argues that the Department's decision to place him on "full restrictions" was an adverse employment action. (*Id.*) Effective April 22, 2014, the Department placed Quadir on full restrictions—an administrative regime that required him to provide medical documentation for all absences. (Dkt. No. 129 ¶ 51-51.) Quadir does not, however, argue that his placement on full restrictions resulted in his being denied leave to which he was entitled, or that any other material change in the conditions of his employment resulted. (Dkt. No. 140 at 25-26; *see* Dkt. No. 157 at 7.) Placement on full restrictions may have inconvenienced Quadir, but

---

Department]." (Dkt. No. 140 at 23.) Quadir does not argue that this arbitration proceeding is an adverse action taken against him and, as a result, the Court declines to consider it as such. Nor is any possible future adverse action resulting from that ongoing arbitration proceeding within the scope of the claims asserted in this case.

inconvenience and scrutiny from management are not, alone, sufficient to constitute an adverse employment action.  *Honey*, 200 F. Supp. 2d at 320-21.

Because no rational fact finder could conclude that Quadir suffered an adverse employment action, the Department is entitled to summary judgment on his discrimination claim.

### C.     Retaliation

Citing the same Department actions just discussed, Quadir also contends that the Department retaliated against him for asserting his rights under the Rehabilitation Act.

The ADA and Rehabilitation Act prohibit employer retaliation against employees who assert their rights under their terms.  *See* 42 U.S.C. § 12203(a) ("No person shall discriminate against any individual because such individual . . . made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter").  To make out a case for retaliation, a plaintiff must show that "(1) she engaged in an activity protected by the [Rehabilitation Act]; (2) the employer was aware of this activity; (3) the employer took an adverse employment action against her; and (4) a causal connection exists between the alleged adverse action and the protected activity," that is, the employer acted with a retaliatory motive.  *Caskey v. Cty. of Ontario*, 560 F. App'x 57, 58 (2d Cir. 2014) (quoting *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (alterations omitted)); *see also Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 148–49 (2d Cir. 2002).  "Once a plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for the challenged employment decision.  If a defendant meets this burden, 'the plaintiff must point to evidence that would be sufficient to permit a rational factfinder to conclude that the employer's explanation is merely a pretext for

impermissible retaliation.'" *Treglia*, 313 F.3d at 721 (quoting *Cifra v. General Elec. Co.*, 252 F.3d 205, 216 (2d Cir. 2001)).

The standard for an "adverse employment action" in a retaliation claim, however, is not as demanding as it is in a discrimination claim. *See Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010). In the retaliation context, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (citation and internal quotation marks omitted). Thus, even actions that do not result in a material change in the terms and conditions of employment may be adverse actions for the purposes of a retaliation claim, so long as such actions might deter a reasonable employee from engaging in protected activity. *See Hicks*, 593 F.3d at 165.

Even under this less demanding standard, the Court concludes—for substantially the same reasons discussed above in the context of Quadir's discrimination claim—that Quadir has not presented evidence sufficient for a trier of fact to conclude that he suffered an adverse employment action. The complained-of counseling memos, for example, which note Quadir's absenteeism and tardiness issues, are concededly not disciplinary in nature and would not have deterred a reasonable employee from engaging in protected activity. *See Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 570 (2d Cir. 2011) ("[W]e have held, in the context of the issuance of a 'counseling memo,' that 'criticism of an employee (which is part of training and necessary to allow employees to develop, improve and avoid discipline) is not an adverse employment action.'" (citation omitted)); *Ulrich v. Moody's Corp.*, No. 13-CV-0008, 2014 WL 4977562, at *13 (S.D.N.Y. Sept. 30, 2014) ("Constructive criticism and evaluation plans are

generally not adverse actions for purposes of a discrimination or *retaliation* [claim]." (emphasis added)). Although the test is an objective one—whether a reasonable employee in Quadir's situation would have been deterred—"it is relevant that [Quadir] himself was not deterred from complaining" and pursuing his accommodation claim. *Tepperwien*, 663 F.3d at 572. Rather, the record reflects that Quadir continued to object to the conditions of his employment and assert his right to reasonable accommodations throughout the period in question. (*See e.g.,* Dkt. No. 129 ¶¶ 7, 20, 34, 48.)

In any event, even if Quadir could establish the elements of a *prima facie* case for retaliation, the Department has articulated legitimate, non-retaliatory reasons for each of the alleged adverse employment actions and Quadir has not offered evidence sufficient to support a finding that the Department's reasons are pretextual. For instance, the Department has a concededly legitimate interest in ensuring that its employees attend work and arrive at work on time. It follows that the Department's requirement that Quadir present medical documentation in support of his absences furthered a legitimate goal, especially given his attendance record. (*See* Dkt. No. 129 ¶¶ 51-60.) Indeed, between April 15, 2013, and April 11, 2014, prior to his placement on "full restrictions," Quadir was absent 92 days and tardy 145 days. (Dkt. No. 108 ¶¶ 54-57; Dkt. No. 107 ¶¶ 26-27.) Quadir was the only employee in the Bronx Career Center to exhaust his accrued leave. (Dkt. No. 108 ¶ 58.) Moreover, the Department's efforts to counsel Quadir on problems with absence and tardiness *predate* his initial request for an accommodation, significantly undercutting his contention that he was subject to retaliation. (*See* Dkt. Nos. 110-2, 110-3, 110-4; Dkt. No. 129 ¶ 53.) Likewise, even if Quadir could show that he was entitled to take leave in order to pursue his *pro se* litigation, the Department has plausibly established that it

rejected Quadir's request because its operational needs required his presence. (Dkt. No. 106 at 22; Dkt. No. 107 ¶¶ 87-91.)

Quadir argues that the deposition of his supervisor Atul Sheffey could permit a factfinder to conclude that the Department acted with retaliatory animus toward him in documenting his attendance and lateness issues. (Dkt. No. 140 at 18-19.) Sheffey testified that, following a conversation with Quadir in which he insisted that he would continue to arrive at work late because his tardiness related to his illness, Sheffrey decided to begin documenting Quadir's lateness "by the book" whereas he had previously been lenient in documenting Quadir's tardiness. (Dkt. No. 140-20 at 139-142). But Sheffrey's effort to document Quadir's lateness according to protocol can hardly be characterized as proof of retaliatory animus, especially because Sheffrey testified that he documented virtually every employee's tardiness "by the book." (*Id.* at 142, 147.)

The testimony of Andrew Castillo, a colleague of Quadir, likewise fails to create a genuine issue of material fact as to pretext. (*See* Dkt. No. 140-20.) Castillo testified that, "at different times different people [have been] singled out" for scrutiny by management and that Quadir has at times been singled out for, among other things, writing notes that are "too long" or allowing customers to wait an excessive amount of time before attending to them. (*Id.* at 78, 86.) In Castillo's view, Quadir's supervisors act in this way because "they don't particularly like [Quadir]." (*Id.* at 87.) Such speculative and conclusory testimony is insufficient to create a genuine issue of material fact where the Department has, as here, offered fulsome, non-retaliatory reasons for the complained-of actions grounded in the evidence before the Court. As mentioned above, this conclusion is bolstered by the record evidence that the Department's

15

efforts to counsel Quadir on problems with absence and tardiness *predate* his initial request for an accommodation.

Accordingly, the Department is entitled to summary judgement on Quadir's retaliation claim.

### III.   Conclusion

For the foregoing reasons, the Department's motion for summary judgment is GRANTED.

The Clerk of Court is directed to close the motion at docket number 105 and to close this case.

SO ORDERED.

Dated: June 29, 2016
       New York, New York

_____
J. PAUL OETKEN
United States District Judge